IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| **MARY LEE DAVIS, as** | ) | |
| **Administrator of the Estate of** | ) | |
| **Fletcher Ray Stewart, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:16-cv-855-CDL-DAB** |
| | ) | |
| **BRYAN EDWARDS,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Mary Lee Davis, as administrator of the Estate of Fletcher Ray Stewart, alleges constitutional violations and state law claims of wrongful death, false arrest, and unlawful detention against Defendants, Bryan Edwards, Jimmy Abbett, David McMichael, William J. Hough, David E. Barbour, Rico Hardnett, Christopher Fenn, and the City of Dadeville, in connection with an alleged unlawful *Terry*[1] stop and seizure which resulted in the fatal shooting of Fletcher Ray Stewart.

Before the Court are Defendants' motions to dismiss (Docs. 41, 45, 47), Plaintiff's response in opposition (Doc. 55), and Defendants' replies (Docs. 62, 63). The parties have been afforded an opportunity to fully brief the matter, and the court heard argument on April 20, 2017. For the

---

[1] *Terry v. Ohio*, 392 U.S. 1, 19–20, 30, (1968) (holding that law enforcement officers may seize a suspect for a brief, investigatory stop if they have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and the stop was reasonably related in scope to the circumstances which justified the interference in the first place).

reasons stated herein, it is the **RECOMMENDATION** of the undersigned that the motions to dismiss be **granted in part** and **denied in part** as set forth below.

## I.    JURISDICTION

Subject matter jurisdiction is conferred by 28 U.S.C. § 1343(3) as to Plaintiff's federal causes of action.  The parties do not contest personal jurisdiction or venue, and the court finds sufficient information of record to support both.  *See* 28 U.S.C. § 1391.  On January 5, 2017, this matter was referred to the undersigned by the Honorable Clay D. Land for disposition or recommendation on all pretrial matters. (Doc. 35); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

## II.    STATEMENT OF FACTS[2]

Fletcher Ray Stewart ("Stewart") was a readily recognizable person—a six foot, five-inch tall, extremely thin, bearded, 46-year old white male with mild mental retardation.  He was a lifelong resident of Booger Hollow Road, a sparsely populated area in rural Tallapoosa County several miles north and east of the City of Dadeville, where he was widely known by and easily recognizable to many of the approximately 3,200 citizens who live in Dadeville, as well as being well known to local law enforcement personnel.  In the decade preceding the incident of February 11, 2015, local law enforcement personnel, including Tallapoosa County Sheriff's Office deputies and Dadeville police, were well acquainted with Stewart through more than half a dozen

---

[2] Except as indicated otherwise, the statement of facts is taken from the allegations in Plaintiff's Amended Complaint.  *See* (Doc. 27).

documented encounters with him, including a variety of petty misdemeanor offenses, most of which were dismissed and none of which involved Stewart causing injury to any person.

On February 11, 2015, Stewart was walking alone down Booger Hollow Road, a rural public road, only several hundred yards from his home.  He was carrying a BB pistol.  He was approached by Defendants, Tallapoosa County Deputy Sheriff Bryan Edwards ("Edwards) and City of Dadeville Police Officers Rico Hardnett ("Hardnett") and Christopher Fenn ("Fenn"), who attempted to stop and detain Stewart because the Tallapoosa County Sheriff's Office ("TCSO") had received a phone call reporting that Stewart was openly and in plain sight carrying a gun.  The gun turned out to be a BB pistol.

A transcript of the 911 call to the TCSO was attached to Plaintiff's response to the motions to dismiss and to Defendants' reply.  *See* (Docs. 55 at 42–43; 62-1).  The call was placed by Benny Welch, a nephew of Stewart.  Welch called to report an emergency on Booger Hollow Road.  In the call, he reports that Stewart "just walked past us and he's raising all kind of Cain and he's got a pistol in his pocket.  We seen some of–you know, he pulled it out when he walked by."  *Id.* at 42.  The 911 operator tells the caller that a deputy will be sent to the location.  *Id.* at 43.

When Edwards, Hardnett and Fenn ordered Stewart to stop, he disregarded the order or direction to stop because he had been harassed in the past by local law enforcement and wanted to avoid any additional unpleasant, unwanted interactions with these Defendants.  Stewart continued to walk into a wooded area adjacent to Booger Hollow Road.  Edwards, Hardnett, and Fenn pursued Stewart into the wooded area, drew and pointed their firearms at Stewart and loudly shouted at Stewart to stop.

When these Defendants confronted Stewart in the wooded area with their pistols drawn and pointed at him, Stewart then stopped and attempted to comply with multiple directions shouted at him by Edwards. While Stewart was attempting to comply with the multiple orders and directions, Edwards fired his pistol at Stewart, striking him twice in the shoulder/torso and abdomen. Plaintiff alleges Edwards, Hardnett, and Fenn failed to take any common sense first aid measures to stop Stewart's bleeding. Stewart died from his injuries.

## III.     PLAINTIFF'S CLAIMS

Plaintiff Mary Lee Davis ("Plaintiff") is the niece and appointed administrator of the Estate of Fletcher Ray Stewart, deceased. (Doc. 27, ¶ 4). She initiated this action in October 2016 with the filing of a seven-count complaint alleging constitutional violations and state law claims. (Doc. 1). Several of the Defendants filed a motion to dismiss (Doc. 10) and a motion to strike (Doc. 11). Thereafter, Plaintiff sought and was granted leave to amend her complaint. (Docs. 25, 26). Plaintiff's First Amended Complaint is the operative complaint. (Doc. 27). Counts I, II, III, and IV of the First Amended Complaint assert claims for constitutional violations against Edwards, Hardnett, and Fenn for liability pursuant to 42 U.S.C. § 1983. Count I alleges these Defendants conducted an unlawful *Terry* stop in violation of the Fourth Amendment. *Id*., ¶¶ 34–37. Count II alleges these Defendants are liable for an unlawful seizure or arrest. *Id*., ¶¶ 38–41. Count III claims Edwards, Hardnett, and Fenn used unlawful and excessive force. *Id*., ¶¶ 42–45. Count IV alleges these Defendants were deliberately indifferent to Stewart in failing to take common sense measures or render any aid in the face of Stewart's life-threatening injuries. *Id*., ¶¶ 46–55.

Counts V and VI seek to impose liability under 42 U.S.C. § 1983 against Defendants, Jimmy Abbett ("Abbett"), David McMichael ("McMichael"), William J. Hough ("Hough"), David

E. Barbour ("Barbour"), and the City of Dadeville, for Fourth and/or Fourteenth Amendment violations. *Id*., ¶¶ 56–71.  Abbett was, at all material times, the Sheriff of Tallapoosa County, Alabama. *Id*., ¶ 6.  McMichael was the Chief Deputy Sheriff of Tallapoosa County. *Id*., ¶ 7.  Hough was the training officer for the TCSO. *Id*., ¶ 8.  Plaintiff alleges Abbett, McMichael, and Hough were ultimate policymakers for the TCSO. *Id*., ¶ 9.  Barbour was the Chief of Police for the City of Dadeville and the ultimate policymaker for the operation of the Dadeville Police Department ("Dadeville PD"). *Id.*, ¶ 12.

Count V alleges Abbett, McMichael, Hough, Barbour, and the City of Dadeville were deliberately indifferent in failing to provide training or instruction and/or in failing to promulgate policies and procedures related to an officer's encounters with a mentally deficient person. *Id*., ¶¶ 56–63.  Count VI alleges these Defendants were deliberately indifferent in failing to provide training or instruction and/or in failing to promulgate policies and procedures related to common sense preservation of life measures when faced with an individual suffering from obvious life-threatening injuries. *Id*., ¶¶ 64–71.

Counts VII and VIII sue Edwards, Hardnett, Fenn, and the City of Dadeville for state law claims of wrongful death under ALA. CODE §6-5-410 (1975) and false arrest and unlawful detention. (Doc. 27, ¶¶ 72–77).

## IV.   DEFENDANTS' MOTIONS

### *A. Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 41)*

Defendants Edwards, Abbett, McMichael, and Hough (collectively the "TCSO Defendants") move to dismiss Plaintiff's First Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 41, 42).  As to Counts I, II, and III, the

TCSO Defendants argue the claims fail because Edwards had a reasonable basis for stopping Stewart.  Regarding Count I, the TCSO Defendants submit that the analysis under *Terry v. Ohio* is inapplicable because there was no actual stop.  Defendants argue that Plaintiff's allegation that Edwards "attempted to stop and detain" is not enough to constitute a "stop" to invoke the analysis under *Terry v. Ohio*.  Defendants cite *California v. Hodardi D.*, 499 U.S. 621, 625–26 (1991), for the proposition that contact and then flight does not constitute a stop.

In moving to dismiss Count II, Defendants argue the 911 call was reliable and therefore justified law enforcement's actions here.  Although not labeled a "911 call" by Plaintiff in the amended complaint, Defendants point out that Plaintiff concedes the call identified Stewart, provided his location, and stated he was brandishing a pistol.  These facts, Defendants argue, are sufficient to support Edwards' reasonable suspicion to stop Stewart.  Defendants further argue suspicious behavior coupled with flight will justify a *Terry* stop.  (Doc. 42 at 11) (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)).

Because Plaintiff's claim in Count III of unlawful and excessive force is premised on the argument that the initial stop was unlawful, Defendants contend that Count III must be dismissed because, according to Defendants, the stop was justified.  (Doc. 42 at 11–12).

Defendants seek to dismiss the claim of deliberate indifference contained in Count IV against Defendant Edwards because he is entitled to qualified immunity.  In support, Defendants argue that Edwards acted within his discretionary authority; Plaintiff cannot show Edwards was placed on notice that his conduct violated clearly established law; and Plaintiff has failed to adequately allege causation.  *Id.* at 13–17.  Additionally, Defendants contend there is no constitutional requirement to render first aid.

6

As for the liability in Counts V and VI of the "policy-makers," Abbett, McMichael, and Hough, Defendants submit the amended complaint fails to allege a pattern that would have placed these Defendants on notice of deficient policies and/or training.  Because supervisory officials cannot be liable under § 1983 for the unconstitutional acts of their subordinates on the basis of vicarious liability, Plaintiff must demonstrate the policy-makers had notice of a history of abuse which was not corrected, implemented customs or policies that resulted in deliberate indifference to constitutional rights, or directed the subordinates to act unlawfully.  Because Plaintiff fails to allege any specific facts to demonstrate notice or a policy or practice by these Defendants, the TCSO Defendants submit dismissal is warranted.

Regarding the state law claims against Edwards for wrongful death (Count VII) and false arrest/detention (Count VIII), these Defendants urge absolute state immunity applies to preclude Plaintiff's claims.

### B. Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 47)

Defendants, Barbour, Hardnett, Fenn, and the City of Dadeville (collectively "Dadeville Police Defendants") move to dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Docs. 47, 48).  The Dadeville Police Defendants argue that Plaintiff's claims in Counts I, II, V, and VIII must fail as those claims abated with Stewart's death.  Citing *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1045 (11th Cir. 2011), these Defendants argue § 1983 does not have a survivorship provision.  Accordingly, Alabama's survivorship statute, ALA. CODE § 6-5-462, applies to § 1983 actions.  *See* 42 U.S.C. § 1988(a) (where federal law is deficient, the law of the forum state applies to the extent not inconsistent with federal law).  Thus, because Counts I, II, V, and VIII seek

damages other than for the death of Stewart, Defendants argue those claims are due to be dismissed as a matter of law.  (Doc. 48 at 2–4).

The Dadeville Police Defendants further assert the federal claims against them must be dismissed in any event because there is no constitutional basis.  They urge no policy or custom requirement has been met to invoke § 1983 liability.  Additionally there has been no allegation of a pattern of constitutional violations, that the supervisory Defendant was on notice of a need to train, or that there is a causal connection to state a claim for supervisor liability.  Defendant Barbour claims he is also entitled to qualified immunity against the § 1983 supervisor liability claims.  *Id.* at 7–11.  Defendants Hardnett and Fenn argue they are entitled to qualified immunity and state-agent discretionary function immunity.  *Id.* at 12–23.

*C. Supplemental Motion to Dismiss Plaintiff's Amended Complaint (Doc. 45)*

The TCSO Defendants supplemented their prior motion to dismiss arguing Counts I, II, V, and VIII are due to be dismissed because those claims abated with Stewart's death.  (Doc. 45).  Because the claims in these Counts relate to conduct that occurred prior to his death and did not directly result in his death, the TCSO Defendants argue those claims fail as a matter of Alabama law.  *Id.* at 2–3.

## V.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The pleader must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[D]etailed factual allegations" are not required, but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are

not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

Motions to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) are independent of the ultimate merits of the claim.  As the Eleventh Circuit has observed:

> Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, "facial" and "factual" attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir.1990). Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. *Id.* at 1529. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. *Id.* In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits. *Id.*

*Morrison v. Amway Corp.*, 323 F.3d 920, 924 n. 5 (11th Cir. 2003).

## VI.   ANALYSIS

### A.  Terry Stop – Count I

"No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (quoting *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251 (1891)). Notwithstanding this right, courts recognize that "law enforcement officers may seize a suspect for a brief, investigatory ... stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011) (quoting *Terry*, 392 U.S. at 19–20). "While

reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Wardlow*, 528 U.S. at 123 (internal quotation marks omitted). Reasonable suspicion requires "more than just a hunch," and "[t]he validity of the stop must be considered in view of the totality of the circumstances." *United States v. Lee*, 68 F.3d 1267, 1271 (11th Cir.1995) (citing *United States v. Sokolow*, 490 U.S. 1, 7–8 (1989)). In Count I, Plaintiff alleges that the Defendant officers, Edwards, Hardnett, and Fenn conducted an unlawful *Terry* stop which resulted in Stewart's death.

The TCSO Defendants contend there was no "*Terry* stop" on Booger Hollow Road because Stewart did not stop after being confronted, but rather continued to walk into the woods. (Doc. 42 at 7–8). Defendants' reading of Count I is too narrow. A fair reading of that count along with the general allegations, which have been incorporated into the claim, supports Plaintiff's claim that the officers were making a stop as contemplated by *Terry*. The issue becomes whether reasonable suspicion under the circumstances existed to justify the stop.

Defendants claim the 911 call identifying Stewart carrying a pistol and "raising Cane" had sufficient indicia of reliability to support the officers' reasonable suspicion. (Docs. 42 at 8–11; 62 at 4–7). In contrast, Plaintiff cites case law that reports of a person's lawful possession of a handgun, even when coupled with potentially incriminating facts, is insufficient to justify a *Terry* stop. (Doc. 55 at 7–9) (citing *Fla. v. J.L.*, 529 U.S. 266, 272 (2000) (anonymous tip that person is carrying gun insufficient to justify police officer's stop and frisk); *United States v. Black*, 707 F.3d 531, 540 (4th Cir. 2013) ("where a state permits individuals to openly carry firearms, the exercise of this right, without more, cannot justify an investigatory detention"); *Northrup v. City of Toledo*,

10

785 F.3d 1128, 1132 (6th Cir. 2015) (being armed, without more, in an open carry state, does not justify detention).  Subject to certain exceptions, Alabama is an open carry state.  *See* ALA. CODE § 13A-11-7(c) (providing "[i]t shall be a rebuttable presumption that the mere carrying of a visible pistol, holstered or secured, in a public place, in and of itself, is not a violation of this section"); ALA. CODE § 13A-11-75(g) ("This section shall not be construed to limit or place any conditions upon a person's right to carry a pistol that is not in a motor vehicle or not concealed.").  Thus, Stewart walking down the road, carrying a pistol, without more, was lawful.

Plaintiff alleges Stewart was stopped because of a phone call reporting he was openly and in plain sight carrying what turned out to be a BB pistol.  (Doc. 27, ¶ 24).  Again, this alone would likely be insufficient to establish reasonable suspicion under *Fla. v. J.L., supra*.  The details of the 911 call are not alleged in the amended complaint.  However, Plaintiff attaches to her response a transcript of the 911 call. (Doc. 55 at 42–43).  The transcript was also submitted by Defendants. (Doc. 62-1).  In general, a court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is central to the plaintiff's claim and is undisputed, that is, the authenticity of the document is not challenged. *Boyle v. City of Pell City,* ___ F.3d ___ (11th Cir. August 10, 2017) (citing *Speaker v. HHS*, 623 F.3d 1371, 1379 (11th Cir. 2010); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).  The parties do not dispute the transcription of the call.  In fact, counsel for Plaintiff recites the details of the call at the hearing to demonstrate there is no reference in the call to a criminal offense occurring or being threatened to occur. The transcript of the 911 call reveals that the call was not from an unknown caller, but rather was made by Stewart's nephew, Benny Welch.  He reported that Stewart had a pistol and he "was raising all

kind of Cain." (Doc. 62-1 at 2). Welch identified the address where Stewart was located and further confirmed he saw Stewart holding the gun at the same time he was making the call. An unknown male speaker states, "He flashed it. I seen it." *Id.* These circumstances certainly supported the officers following up on the telephone call by going to Stewart's location. The Eleventh Circuit has recognized that a "911 call is one of the most common–and universally recognized–means through which police and other emergency personnel learn that there is someone in a dangerous situation who urgently needs help." *United States v. Holloway*, 290 F.3d 1331, 1339 (11th Cir. 2002) (quoting *United States v. Richardson*, 208 F.3d 626, 630 (7th Cir. 2000)).

"[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions." *Florida v. Royer*, 460 U.S. 491, 497 (1983). The Court noted, however, that the individual approached "need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way." *Id.* at 498 (citing *Terry*, 392 U.S. at 32–33, (Harlan, J., concurring); *id.,* at 34, (White, J., concurring)). According to the allegations of the amended complaint, that is what Stewart did. Plaintiff alleges after being confronted on Booger Hollow Road, Stewart withdrew to the wooded area so as to avoid any unwanted interactions with law enforcement. (Doc. 27, ¶¶ 25, 28).

Defendants argue that suspicious behavior coupled with flight will justify a *Terry* stop and detention. (Doc. 42 at 11) (citing *Wardlow*, 528 U.S. at 124–25). But here, Plaintiff alleges Stewart "went into a wooded area adjacent to Booger Hollow Road." (Doc. 27, ¶ 25). Plaintiff describes Stewart's actions as a "lawful withdrawal." *Id.*, ¶ 30. There are no allegations of "unprovoked

flight" as referenced in *Wardlow*.  And there are no allegations that Stewart "ran" as argued by Defendants.  (Doc. 42 at 11).  Further, there are no allegations of suspicious behavior when the officers confronted Stewart on Booger Hollow Road.   On the allegations pled and even considering the 911 call, neither Stewart's withdrawal into the woods nor the vague report that he possessed a pistol and was "raising all kind of Cane" is sufficient to support a reasonable suspicion that Stewart was involved in, or was about to be involved in, criminal activity.  Accordingly, the court finds that Plaintiff's Amended Complaint states a claim in Count I against Edwards, Hardnett, and Fenn for liability pursuant to 42 U.S.C. § 1983 based on an alleged unlawful *Terry* stop.  Accordingly, the undersigned recommends the motion to dismiss be denied as to Count I.

   *B. Seizure or Arrest – Count II*

   Count II similarly alleges § 1983 liability based on an unlawful seizure or arrest in violation of Stewart's Fourth Amendment rights.  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.   A seizure occurs "whenever a police officer accosts an individual and restrains his freedom to walk away."  *Terry*, 392 U.S. at 16.  Plaintiff alleges the officers "effected their seizure of Mr. Stewart by threateningly communicating to him to stop, forcing him at gunpoint to submit to their commands, denying him the right to go about his business, and forcibly restraining his freedom of movement."   (Doc. 27, ¶ 28).   Again, a reasonableness standard applies, and the issue becomes whether the officers had arguable reasonable suspicion of possible criminal activity.  *See Clark v. City of Atlanta, Ga.*, 544 Fed. App'x 848, 854 (11th Cir. 2013) ("because the officers had arguable reasonable suspicion of possible criminal activity, they were justified in coming onto the property with their guns drawn

to make an investigatory stop in order to determine whether or not the Clarks were engaging in or about to engage in criminal activity").  In a light most favorable to Plaintiff, considering the totality of the circumstances including the vague conclusory details of the 911 call, Stewart's withdrawal into the woods, and the lack of allegations of flight, there was no reasonable basis for suspecting Stewart of criminal activity to justify the seizure.  The undersigned concludes that on the facts as alleged, Plaintiff has stated a cause of action for an unlawful seizure by Edwards, Hardnett, and Fenn in violation of Stewart's Fourth Amendment rights.   Thus, it is recommended that Defendants' motion to dismiss Count II be denied.

C. *Excessive Force – Count III*

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)). The Supreme Court has held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under" a reasonableness standard. *Graham*, 490 U.S. at 395.  As a general rule, an officer has the power to use a reasonable amount of force in making an arrest or investigatory stop. *Id.* at 396 (citing *Terry*, 392 U.S. at 22–27). When a plaintiff claims an officer used excessive force, courts utilize an objective test to determine the reasonableness of the officer's actions in light of the totality of the circumstances. *Id.* Relevant factors courts consider include: "the severity of the crime, whether the suspect poses a threat to the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Saucier v. Katz*, 533 U.S. 194, 195 (2001) (citing *Graham*, 490 U.S. at 396).

14

In Count III, Plaintiff alleges "Stewart was complying with the multiple confusing and conflicting orders and directions shouted at him, [when] defendant Edwards abruptly began firing his pistol at Mr. Stewart, striking him twice in [the] shoulder/abdomen and torso." (Doc. 27, ¶ 31). By Plaintiff's allegations, Stewart was trying to be compliant and he was not fleeing or seeking to evade arrest. There are no allegations to support Stewart posed a threat at that point. Reviewing the allegations of the amended complaint in a light most favorable to Plaintiff, it cannot be said that the officers used only enough force as necessary. As pled, Plaintiff's allegations state a cause of action for unlawful and excessive force in violation of the Fourth Amendment against Edwards who shot Stewart. Thus, Edwards' motion is due to be denied as to Count III.

Defendants argue because the stop was lawful, all conduct flowing from the stop was lawful. As noted above, Plaintiff's allegations support a conclusion that the stop was unlawful. Even if the Court were to conclude otherwise, there can be a lawful stop, and thereafter a Fourth Amendment violation due to excessive force. The Eleventh Circuit has repeatedly held "that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008). Additionally, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir.2007) (quoting *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002)) (quotation marks omitted). Thus, at this stage in the proceedings, the motion to dismiss by officers Hardnett and Fenn is due to be denied as well.

*D. Qualified Immunity*

15

Although Plaintiff's Amended Complaint states a claim in Counts I, II, and III, the Defendants' motions to dismiss may nevertheless be granted in the event the officers are entitled to qualified immunity.  Qualified immunity completely "protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  The essence of a qualified immunity analysis is an officer's objective reasonableness. *See Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1962); *Lee*, 284 F.3d at 1195.  If reasonable officers could differ on the lawfulness of the defendants' actions, the defendants are entitled to immunity. *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003).  Qualified immunity "gives ample room for mistaken judgments" but does not protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

"The qualified immunity inquiry involves three steps: (1) the alleged conduct must fall within the scope of the discretionary authority of the actor; (2) if it does, we must then determine whether that conduct violates a constitutional right; (3) if so, we must inquire whether the asserted right was clearly established at the time of the alleged violation." *Tinker v. Beasley*, 429 F.3d 1324, 1326–27 (11th Cir. 2005).  The qualified immunity analysis first requires an officer "prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Lee*, 284 F.3d at 1194 (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988)).  Here, Defendants Edwards, Hardnett, and Fenn were dispatched to investigate a 911 call regarding Stewart openly

and in plain sight carrying a pistol. They responded to and investigated the 911 call by locating and confronting Stewart on Booger Hollow Road. The officers' conduct in responding to the 911 call would certainly fall within their discretionary authority. However, the court cannot say based on the allegations pled that the officers' subsequent conduct of pursuing Stewart into the wooded area without reasonable suspicion would fall within their discretionary authority. Further, as discussed above, the stop, seizure, and amount of force used against Stewart was arguably unlawful and in violation of Stewart's constitutional rights based upon Plaintiff's allegations. Accordingly, Defendants motions to dismiss Counts I, II, and III based on qualified immunity are due to be denied.

### E. Failure to Render Emergency Aid - Count IV

In Count IV of the amended complaint, Plaintiff sues Defendants Edwards, Hardnett, and Fenn under 42 U.S.C. § 1983 for deliberate indifference in failing to render emergency aid. As a preliminary matter, Plaintiff acknowledges there is no constitutional obligation for law enforcement to be trained to provide medical care. (Doc. 27, ¶ 48). Notwithstanding, Plaintiff alleges that these Defendants "failed to take the most simple and obvious actions to stop or retard Mr. Stewart's loss of blood, stood by, [and] did nothing to effectively stop or retard the bleeding as Mr. Stewart bled to death." *Id.*, ¶ 53. Plaintiff alleges Edwards, Hardnett, and Fenn were deliberately indifferent to the "immediate need to take common sense measures to prevent Stewart's death." *Id.*, ¶ 55. Noticeably absent is any allegation that there was a delay or failure in

calling for EMS personnel to come to the scene or that these Defendants had first aid equipment with them that they failed to use.[3]

Defendants submit that they are entitled to qualified immunity requiring dismissal of Count IV.  As discussed above, qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.  "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope*, 536 U.S. at 736 (citing *Saucier*, 533 U.S. at 201. Here, Plaintiff concedes there is no clearly established constitutional obligation to be trained in or to provide medical care.  Thus, there was no constitutional violation in failing to render medical aid, and accordingly, Count IV is due to be dismissed.

Plaintiff cites *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239 (1983), for the proposition that the responsible governmental agency is required to "provide medical care to persons … who have been injured while being apprehended by the police."   *Id.* at 244. Significantly, the City met its obligation in that case by "seeing that [the apprehended suspect] was taken promptly to a hospital that provided the treatment necessary for his injury." *Id.* at 245.  There is no suggestion in that case that the apprehending officers were obligated to render medical assistance on the scene.  Likewise, here, there was no constitutional obligation for Edwards, Hardnett, and Fenn to personally render medical assistance to Stewart in these circumstances where there is no allegation they delayed in calling for emergency medical services.

_____

[3] Plaintiff acknowledges that the officer Defendants called for EMS care.  *See* (Doc. 55 at 19).

Plaintiff's reliance on *Olson v. Barrett*, No. 6:13-CV-1886-ORL, 2015 WL 1277933 (M.D. Fla. Mar. 20, 2015), is similarly misplaced.  In *Olson*, the officers not only chose to prevent bystanders, including a medically qualified and trained nurse, from providing first aid, but also canceled the emergency assistance that had been called.  *Id.* at *10.  Due to the factual distinctions, Plaintiff's reliance on the *Olson* case is unavailing.  Count IV is due to be dismissed.

### F. Municipal or Supervisory Liability under § 1983 – Counts V and VI

The Eleventh Circuit has determined that, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality has a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *Canton v. Harris*, 489 U.S. 378, 388(1989)). "In order for a plaintiff to demonstrate a policy or custom, it is 'generally necessary to show a persistent and wide-spread practice.'" *McDowell*, 392 F.3d at 1290 (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir.1999)). "This prevents the imposition of liability based upon an isolated event." *Id*. (citing *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496 (11th Cir.1986)).

"It is well-established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  A plaintiff may be able to establish supervisory liability under § 1983 if the plaintiff can demonstrate that the supervisor personally participated in the alleged unconstitutional conduct or by showing a causal connection between the supervisor's actions and the alleged constitutional deprivation.  "A causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice

of the need to correct the alleged deprivation, and he fails to do so,' or when the supervisor's improper 'custom or policy ... resulted in deliberate indifference to constitutional rights.' A causal connection can also be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez v. Reno*, 325 F.3d 1228, 1234–35 (11th Cir. 2003) (internal citations omitted).

Count V purports to state a claim against Abbett, McMichael, Hough, Barbour, and the City of Dadeville for failing to promulgate policies and procedures to address interactions and circumstances in which mentally deficient persons display aberrant behavior toward law enforcement personnel.  (Doc. 27, ¶¶ 56–63).  In her amended complaint, Plaintiff alleges that it is "highly predictable that their law enforcement personnel would interact in dangerous situations with persons who suffered from mental deficiencies."  *Id.,* ¶ 57.  She further alleges "Stewart's mentally (sic) deficiencies were well known to law enforcement agencies in Tallapoosa County." *Id.,* ¶ 60.  Absent, however, are any specific factual allegations to establish a policy or custom that could be considered a wide-spread pattern or practice.  Additionally, Plaintiff's conclusory allegations that it is "highly predictable" that law enforcement will engage in interactions with mentally ill persons is insufficient to establish notice by the supervisor or municipality of deficient policies and/or training.

Count VI seeks to allege a §1983 claim against Defendants Abbett, McMichael, Hough, Barbour, and the City of Dadeville for failing to provide training and/or promulgate policies regarding rendering emergency or "common sense" medical care.  "Municipal policy or custom may include a failure to provide adequate training if the deficiency evidences a deliberate

20

indifference to the rights of its inhabitants." *Lewis v. City of W. Palm Beach, Fla*., 561 F.3d 1288, 1293 (11th Cir. 2009) (internal quotation omitted). To establish deliberate indifference, the "plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Barr v. Gee*, 437 Fed. App'x 865, 874 (11th Cir. 2011) (quoting *Lewis*, 561 F.3d at 1293). The municipality is on notice if either "(1) the municipality is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, or (2) the likelihood for a constitutional violation is so high that the need for training would be obvious." *Barr*, 437 Fed. App'x at 874 (citing *Lewis*, 561 F.3d at 1293).

Like Count V, Count VI similarly fails to allege a pattern or practice, or any other facts, to put these Defendants on notice of a need to train or promulgate policies directed to rendering emergency medical care.  Plaintiff makes the conclusory allegation that because law enforcement are equipped with guns, it is "obvious" that law enforcement may use deadly force and "infliction of gunshot wounds was inevitable, or at the very least, highly predictable."  (Doc. 27, ¶ 68).  In her pleadings, Plaintiff acknowledged there is no constitutional duty for law enforcement personnel to be trained to provide medical care.  (Doc. 27, ¶ 66).  And she has not pled any ultimate facts to establish that training and/or policies were warranted or that the supervisors had notice that such policies were necessary.  For the reasons set forth above, the undersigned recommends Counts V and VI be dismissed.

### G. Wrongful Death – Count VII

Count VII sues Edwards, Hardnett, Fenn, and the City of Dadeville under Alabama's wrongful death statute, ALA. CODE § 6-5-410.  "[W]hen a constitutional violation actually causes

the injured party's death, a § 1983 claim can be asserted through the Alabama wrongful death statute." *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1047 (11th Cir. 2011).  In Count VII, Plaintiff alleges the combined wrongful acts, omissions, and/or negligence of Defendants Edwards, Hardnett, and Fenn were a proximate cause of Stewart's death.  (Doc. 27, ¶ 73).  Plaintiff further alleges Edwards, Hardnett, and Fenn acted willfully, maliciously, fraudulently, and in bad faith.  *Id., ¶* 74.

   In her response to the motions to dismiss, Plaintiff concedes that a state wrongful death claim may not be pursued against the County Defendants, Edwards, McMichael and Hough, as they are entitled to absolute immunity under Article I, § 14 of the Alabama Constitution.[4]  *See* (Doc. 55 at 32).  Sheriffs are executive officers of the State of Alabama, *see* ALA. CONST., Art. V § 112, and sheriff deputies are legal extensions of the sheriff and are likewise considered officers of the State.  *See Alexander v. Hatfield*, 652 So. 2d 1142, 1143–44 (Ala. 1994).  Accordingly, the motion to dismiss by Deputy Edwards is due to be granted.  For the same reasons, the undersigned recommends Plaintiff's state claim for false arrest and unlawful detention against Edwards in Count VIII be dismissed as Deputy Edwards is protected by absolute immunity.

   Police officers Hardnett and Fenn, and the City of Dadeville argue that the wrongful death claim against them fails because they are entitled to state-agent discretionary function immunity.  (Doc. 48 at 20–23).  In pertinent part, Alabama law provides that police officers and the governmental agency authorized to appoint them,

> whose duties prescribed by law, or by the lawful terms of their employment
> or appointment, include the enforcement of, or the investigation and reporting
> of violations of, the criminal laws of this state, and who is empowered by the

---

[4] The Alabama Constitution of 1901 prohibits suits against the State.  *See* Ala. Const., Art. I, § 14.

> laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

ALA. CODE § 6-5-338(a) (1975).  Accordingly, "Alabama law provides for immunity for police officers performing discretionary functions within the scope of their employment. … Thus, police officers, and by extension the City, are generally immune from claims of negligence."  *Fowler v. Meeks*, 569 Fed. App'x 705, 708 (11th Cir. 2014) (internal citations omitted).

The Alabama Supreme Court clarified that state-agent civil liability immunity does not attach, however, to a State "when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."  *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000) *holding modified by Hollis v. City of Brighton*, 950 So. 2d 300 (Ala. 2006); *see also City of Birmingham v. Sutherland*, 834 So. 2d 755, 759 (Ala. 2002) (officers will not be protected by discretionary function immunity if they acted willfully, maliciously, or in bad faith).  Additionally, discretionary immunity does not apply if the officers used an unreasonable amount of force in attempting to arrest Stewart. *Mann v. Darden*, 630 F. Supp.2d 1305, 1318 (M.D. Ala.) ("[U]sing an unreasonable amount of force is not within the discretion of an officer.") (citing *Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995)).

While Plaintiff has pled these Defendants acted willfully and maliciously, *see* (Doc. 27, ¶ 74), Defendants contend Plaintiff's allegations are conclusory and void of any factual basis to support a finding of malice, willfulness or bad faith on the part of Hardnett or Fenn.  (Doc. 48 at 23).  Defendants cite *Brivik v. Law*, 545 Fed. App'x 804 (11th Cir. 2013) for the proposition that

allegations that the officer "acted maliciously and in bad faith is conclusory and therefore insufficient to survive a motion to dismiss." *Id.* at 807 (citing *Iqbal*, 556 U.S. at 678) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Plaintiff has not pled any ultimate facts in Count VII to support the allegations of malice and bad faith against Hardnett and Fenn.  In sum, the negligence claims in Count VII against Hardnett, Fenn and the City of Dadeville are due to be dismissed with prejudice, and the remainder of the claims against these Defendants should be dismissed without prejudice to amend in the event Plaintiff can plead more than conclusory statements regarding the malice, willfulness or bad faith on the part of these Defendants.

### H. False Arrest and Unlawful Detention – Count VIII

Plaintiff's eighth claim for relief for false arrest and unlawful detention is due to be dismissed because Plaintiff's claims are limited to those arising from Stewart's death.  Under ALA. CODE § 6–5–462, "a deceased's unfiled tort claims do not survive the death of the putative plaintiff." *Bassie v. Obstetrics & Gynecology Assocs. of N.W. Ala., P.C.*, 828 So. 2d 280, 282 (Ala. 2002); *see Burns v. City of Alexander City*, 110 F. Supp. 3d 1237, 1244 (M.D. Ala. 2015)  ("when an individual dies before bringing a lawsuit, all state law claims that individual could have asserted prior to his demise are subsumed by a claim for wrongful death").  Count VIII seeks damages for the state law claims of alleged unlawful arrest and detention of Stewart.  (Doc. 27, ¶¶ 75–77).  Such state law claims were not alleged to have caused Stewart's death and were not filed prior to his death.  Therefore, those claims do not survive his death, and accordingly, Count VIII of Plaintiff's Amended Complaint is due to be dismissed as to all Defendants.

Defendants argue the same analysis applies to Plaintiff's first and second claims for relief because, they argue, those claims relate to conduct that occurred prior to his death, did not cause his death, and therefore abated with his death.[5]   Defendants correctly observe that because 42 U.S.C. § 1983 does not provide for the survival of civil rights actions, the survivorship of civil rights actions is governed by 42 U.S.C. § 1988(a). *See Estate of Gilliam*, 639 F.3d at 1045 (citing *Robertson v. Wegmann*, 436 U.S. 584, 588–89 (1978)). Section 1988 generally directs that, where federal law is "deficient," the state law of the forum applies as long as it is "not inconsistent with the Constitution and the laws of the United States." 42 U.S.C. § 1988(a).[6]   Accordingly, the Eleventh Circuit has held that Alabama's survivorship statute, ALA. CODE § 6–5–462, is not inconsistent with and applies to §1983 actions.   *Estate of Gilliam*, 639 F.3d at 1045–47 (holding "Alabama survivorship law is not 'inconsistent' with the text of § 1983).

Defendants argue Plaintiff's first and second claims did not directly result in Stewart's death and therefore abated with his death.   (Doc. 62 at 14).   A review of the amended complaint

---

[5] Defendants also make this argument regarding Counts V and VIII, but since the undersigned recommends Counts V and VIII be dismissed for other reasons, the discussion here is directed only to Counts I and II.

[6] In pertinent part, 42 U.S.C. § 1988(a) provides:

> The jurisdiction in civil and criminal matters conferred on the district courts ... for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.

reveals that Plaintiff has generally alleged that the constitutional violations were the proximate cause of Stewart's death. *See* (Doc. 27, ¶¶ 37, 41, 63). In *Gilliam*, the § 1983 excessive force claims that alleged death resulted from the use of force were not at issue because the district court had granted the officers' motion for summary judgment on those claims. *Gilliam,* 639 F.3d at 1044. The claims that went to trial in that case were the § 1983 excessive force claims that alleged other injuries, not the death, was the result of the use of force. *Id. Gilliam* does not stand for the proposition that no § 1983 claim may be pursued when death results. Indeed, that court specifically noted, "[w]e stress at the outset that this case, in its present procedural posture, does not involve a claim that the officers' unconstitutional conduct caused the decedent's death." *Id.* at 1044. The *Gilliam* court held "when a constitutional violation actually causes the injured party's death, a § 1983 claim can be asserted through the Alabama wrongful death statute, ALA. CODE § 6–5–410." *Id.* at 1047; *see also James v. City of Huntsville, Ala*., No. 5:14–cv–02267–SGC, 2015 WL 3397054, at 2–3 (N.D. Ala. May 26, 2015); *Bell v. Shelby Cnty., Ala.*, No. 2:12–CV–2991–LSC, 2013 WL 2248247, at *13 (N.D. Ala. May 21, 2013). Accepting the allegations of the amended complaint as true and construing them in a light most favorable to the Plaintiff, the court finds that Defendants' abatement argument does not provide a basis for dismissal of Counts I and II given Plaintiff's allegations that the unconstitutional conduct caused Stewart's death.

## VII.   CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is respectfully **RECOMMENDED** that Defendants, Abbett, Edwards, Hough, and McMichael's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 41); Defendants, Abbett, Edwards, Hough, and McMichael's Supplemental Motion to Dismiss Plaintiff's Amended Complaint (Doc. 45), and Defendants' Barbour, Hardnett,

Fenn, and City of Dadeville's Motion to Dismiss (Doc. 47) are due to be **GRANTED IN PART** and **DENIED IN PART** as follows: Counts IV, V, VI, and VIII of Plaintiff's Amended Complaint are due to be dismissed as to all Defendants.   On Count VII, Defendants' motion to dismiss as to the Defendant Edwards is due to be **granted**, and on the claims of negligence against Hardnett, Fenn, and the City of Dadeville the motion is due to be **granted**.   As to the remaining claims against Hardnett, Fenn, and the City of Dadeville, the undersigned recommends the motion be **granted with leave to amend**. In all other respects, the undersigned recommends the motions be **denied**.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before September 19, 2017.   Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.   Frivolous, conclusive or general objections will not be considered by the District Court.   The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).   *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **RECOMMENDED** this 5th day of September 2017.

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE
27