IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

```
MARY LEE DAVIS, as                   *
administrator of the Estate of
Fletcher Ray Stewart, deceased,      *

     Plaintiff,                      *

vs.                                  *
                                         CASE NO. 3:16-CV-855-CDL-DAB
BRYAN EDWARDS; JIMMY ABBETT;         *
DAVID MCMICHAEL; WILLIAM HOUGH,
TALLAPOOSA COUNTY, ALABAMA;          *
DAVID BARBOUR; RICO HARDNETT;
CHRISTOPHER FENN; and the CITY       *
OF DADEVILLE,
                                     *
     Defendants.
                                     *
```

O R D E R

Deputy Bryan Edwards of the Tallapoosa County Sheriff's Office and Officers Rico Hardnett and Christopher Fenn of the City of Dadeville Police Department responded to a 911 call of a man with a gun. Upon arrival and after a brief foot chase, Edwards shot and killed the suspect, a intellectually disabled man named Fletcher Ray Stewart. Plaintiff Mary Lee Davis, as administrator of Stewart's estate, brought this action against Edwards, Hardnett, and Fenn under 42 U.S.C. § 1983. The case was referred to the Magistrate Judge for pretrial proceedings. All parties moved for summary judgment. The Magistrate recommended that Plaintiff's and Edwards' motions be denied, and that Hardnett and Fenn's motion be granted. *See* R & R, ECF No.

1

165. Plaintiff and Edwards objected to the denial of their motions for summary judgment. The Court reviews those objections *de novo.* For the reasons explained in the remainder of this Order, the Court (1) adopts the Magistrate's recommendation that Plaintiff's motions for summary judgment be denied; (2) adopts the Magistrate's recommendation that Hardnett and Fenn's motion for summary judgment be granted; and (3) rejects the Magistrate's recommendation that Edwards' motion for summary judgment be denied. Accordingly, summary judgment is granted in favor of Edwards, Hardnett, and Fenn as to all of Plaintiff's claims.

QUALIFIED IMMUNITY STANDARD FOR SUMMARY JUDGMENT

When evaluating a law enforcement officer's motion for summary judgment based upon the defense of qualified immunity, the Court must accept the plaintiff's version of the facts and determine whether under those facts the officer's conduct violated plaintiff's clearly established constitutional rights. *See Perez v. Suszczynski*, 809 F.3d 1213, 1217 (11th Cir. 2016) (explaining that courts "must review the evidence in this manner 'because the issues . . . concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law'" (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002))); *see also Lee*, 284 F.3d at 1194 (emphasizing that the plaintiff

must show the violation of a clearly established constitutional right "under the *plaintiff's* version of the facts").

PLAINTIFF'S VERSION OF THE FACTS[1]

The Plaintiff's version of the facts is as follows:

On February 11, 2015, Bennie Welch called 911 to report that his uncle, Fletcher Ray Stewart, had a gun and was "raisin' Cain" on Booger Hollow Road outside of Dadeville, Alabama. The 911 dispatcher dispatched Edwards to the scene and told him that Stewart was "waving" a gun in the road.[2] Hardnett and Fenn provided back-up. Edwards had encountered Stewart on prior occasions. Edwards arrived on the scene and saw Stewart walking alone in the road. No bystanders were nearby, and Stewart was not brandishing a gun, threatening anyone, or otherwise acting suspiciously. But, when Stewart saw Edwards' police cruiser, he ran into the woods. Edwards, Hardnett, and Fenn pursued him with their weapons drawn. Edwards ordered Stewart to stop. Stewart eventually complied and held his hands out to his side. Edwards yelled at Stewart to tell him where the gun was. Stewart reached behind his back. Edwards yelled again for

---

[1] "Plaintiff's version of the facts" means the undisputed facts plus disputed facts construed in Plaintiff's favor.
[2] Plaintiff takes issue with the fact that Stewart was "waving" the gun because that is not precisely what the informant relayed to the dispatcher in the 911 call. But it is undisputed that the dispatcher did relay to Edwards that the suspect was "waving" a gun. And that is the important fact. *See Williams v. Deal*, 659 F. App'x 580, 583 n.3 (11th Cir. 2016) (per curiam) (explaining that the relevant fact is what was told to the defendant officer).

3

Stewart to show him his hands. According to Edwards and Hardnett, Stewart then took his right hand from behind his back and raised a gun. Edwards then fired six shots. Hardnett saw a pistol fly from Stewart's hands after the shooting started, but neither he nor Fenn saw a gun in Stewart's hands before the shooting.[3] Two shots hit Stewart, and Stewart died from his injuries. After the shooting, the officers discovered that Stewart had actually been holding a B.B. gun that resembled a real pistol.

DISCUSSION

Plaintiff alleges that Defendants violated Stewart's Fourth Amendment rights by (1) conducting an unlawful investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968); (2) unlawfully seizing Stewart in violation of the Fourth Amendment "at the time that [Stewart] submitted to [Edwards'] orders or when defendant Edwards shot and killed Mr. Stewart"; and (3) using excessive force against Stewart in the shooting. *See* First Am. Compl. ¶¶ 34-45, ECF No. 27.[4]

---

[3] Edwards testified that he saw Stewart's gun before he fired. But the Court finds that a reasonable juror could conclude that Edwards did not see Stewart's gun before he fired based on the testimony of Hardnett and Fenn that they did not see a gun before Edwards began firing and based upon a review of the video from Edwards' camera that arguably does not show the gun before the first shot. Therefore, for purposes of Defendants' summary judgment motions, the Court assumes that Edwards did not see a gun before he fired his weapon the first time.

[4] The Court dismissed the majority of Plaintiff's other claims in an earlier order (ECF No. 142). The Magistrate Judge recommended

No one disputes that Defendants were exercising discretionary authority at the time of the alleged constitutional violations. Therefore, to overcome qualified immunity, Plaintiff's version of the facts must demonstrate a violation of Stewart's Fourth Amendment rights *and* that the rights were clearly established at the time of the encounter. *See Perez*, 809 F.3d at 1218. The Court analyzes Plaintiff's pre-shooting seizure claims and Plaintiff's excessive force claims separately.

I. **Plaintiff's Pre-Shooting Seizure Claims**

"[L]aw enforcement officers may seize a suspect for a brief, investigatory *Terry* stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011) (quoting *Terry*, 392 U.S. at 19-20). The reasonable suspicion standard "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). Nonetheless, "the Fourth Amendment requires at least a minimal

---

dismissal of Plaintiff's state-law wrongful death claim and her unconstitutional arrest claim, and Plaintiff did not object. *See* R & R at 4, 14-15. The Court reviewed these recommendations for plain error and, having found none, adopts them.

5

level of objective justification for making [a] stop." *Id.* (quoting *Wardlow*, 528 U.S. at 123). Determining whether reasonable suspicion existed is a "totality of the circumstances" inquiry, and "defensive behavior toward police is a relevant factor in this inquiry." *Id.* at 1186-87. When an officer asserts the defense of qualified immunity to a claim of an unconstitutional investigatory stop, "the issue is not whether reasonable suspicion existed in fact, but whether the officer had *arguable* reasonable suspicion to support an investigatory stop." *Clark v. City of Atlanta*, 544 F. App'x 848, 853 (11th Cir. 2013) (per curiam) (emphasis added) (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1165-66 (11th Cir. 2000)).

Thus, the relevant inquiry is whether Edwards' seizure of Stewart prior to the shooting was supported by "arguable reasonable suspicion." The Court finds that it was. Edwards was informed that Stewart, who he knew to be mentally unstable, was waving a gun on a public roadway. When Stewart saw Edwards, Stewart ran into the woods onto someone else's property. Under the totality of the circumstances, Edwards had an arguably reasonable basis to suspect that criminal activity may be afoot, which authorized him to stop and question Stewart.[5] Therefore, Edwards is entitled to qualified immunity on Plaintiff's pre-

---

[5] Defendants' counsel argue that reasonable suspicion existed that Stewart had violated Alabama law related to disorderly conduct, engaging in menacing behavior, and open carry of a firearm.

shooting seizure claims. Similarly, and perhaps even more clearly, Hardnett and Fenn, who were simply providing back-up for Edwards, are entitled to qualified immunity as to Plaintiff's pre-shooting seizure claims.[6]

## II. Plaintiff's Excessive Force Claim

The Court assumes for purposes of the present order that Edwards did not actually see a gun prior to firing his first shot at Stewart. But that fact alone is not dispositive of the pending motion. Even under Plaintiff's version of the facts, the present record also shows: (1) Edwards knew Stewart to be mentally unstable; (2) Edwards reasonably believed that Stewart was acting erratically, was armed with a firearm, and was dangerous; (3) Stewart fled upon seeing Edwards; (4) when Stewart finally stopped his flight, Edwards did not see a gun and thus reasonably concluded that the gun must be concealed on

---

[6] Plaintiff contends that Stewart's right to be free from such a stop was clearly established by the Supreme Court's decision in *Florida v. J.L.*, 529 U.S. 266 (2000). In that case, police received an anonymous tip "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *Id*. at 268. Police responded to the bus stop, searched the suspect, and found a gun. The Court determined that the anonymous tip, without more, did not justify the stop. *Id*. at 270-71. In the present case, Officer Edwards confronted starkly different circumstances when he stopped Stewart. The 911 caller was not anonymous; he gave police his name and address. *See* Def.'s Mot. for Summ. J. Ex. I, Audio Transcription 3, ECF No. 109-9. He also knew Stewart personally and identified himself as Stewart's nephew. *Id*. at 2. Further, unlike the suspect in *J.L.*, Stewart fled when officers arrived, thus giving officers additional grounds to stop him. Because clearly established law must be "particularized" to the facts of the case, *J.L.* does not clearly establish Stewart's right not to be stopped in this case. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017).

7

Stewart's person; (5) when Edwards ordered Stewart to show him his hands and to turn around, Stewart did not turn around; (6) when Edwards asked Stewart where the pistol was, Stewart did not respond; (7) instead of answering Edwards' question, Stewart reached his right hand behind his back into his waistband; (8) Edwards pointed his weapon at Stewart and ordered him to show his hands; and (9) rather than comply with this order, Stewart kept his right hand behind his back and refused to show his hands. At this point, whether Edwards actually saw the gun or not, he had probable cause to believe that Stewart posed a danger to Edwards and other officers on the scene. Edwards was not required to wait any longer before using deadly force. *See Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) ("[T]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." (alteration in original) (quoting *Long v. Slaton*, 508 F.3d 576, 581 (11th Cir. 2007))).

The relevant inquiry is whether it would have been clear to a reasonable officer that shooting Stewart under these circumstances would be a violation of his Fourth Amendment right to be free from excessive force. Notwithstanding the tragic nature of the shooting, it would not have been clear to a reasonable officer that the shooting was unreasonable under the circumstances. *See Shaw v. City of Selma*, 884 F.3d 1093, 1100

8

(11th Cir. 2018) (explaining that under clearly established law, when a suspect does not comply with officers' commands, officers are not required to wait until the moment a suspect uses deadly force to stop the suspect). Because Edwards' conduct did not violate Stewart's clearly established constitutional rights, Edwards is entitled to qualified immunity on Plaintiff's excessive force claim. And certainly, Hardnett and Fenn, who issued no commands and fired no shots, are likewise entitled to qualified immunity on this claim.

CONCLUSION

As explained above, Defendants motions for summary judgment (ECF Nos. 107 & 129) are granted. The clerk is directed to enter final judgment in this action as to all Defendants.[7]

IT IS SO ORDERED, this 29th day of March, 2018.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE

---

[7] In light of today's Order, Plaintiff's motions for summary judgment (ECF Nos. 89 & 97) are obviously denied.